(Decided 27th February, 1872.)

## WILLIAM M. IVES *vs.* TALBOT BOSLEY.

*Endorser of a Promissory note held liable as a Maker — Evidence — When the granting to the Maker of a Promissory note further time for its payment does not Discharge the Endorser — Usurious interest—Nudum pactum.*

When, to secure the payment of a sum of money loaned, the borrower gives his promissory note, payable to the order of the lender, and endorsed in blank by a third party, such third party is, by conclusion of law, liable as a joint maker or original promissor; and in an action against him, to enforce this liability, evidence that he signed his name on the back of the note as endorser, at the request of the drawer, and for his benefit, is inadmissible, it not appearing that the plaintiff, the payee, knew of such agreement, or in any way assented to it.

An agreement by the payee and holder of a promissory note, after its maturity, to allow the maker further time for its payment, being without consideration, is not a binding obligation upon either party, and does not operate to discharge an endorser of the note from his liability.

An agreement to give further time for the payment of an overdue promissory note, upon the express understanding that eight per cent. interest shall be paid, is a *nudum pactum*—the payment of usurious interest not constituting a good and legal consideration.

Ives *vs.* Bosley.

APPEAL from the Court of Common Pleas.

The nature of the case, together with the first exception taken by the defendant in the Court below, are sufficiently stated in the opinion of this Court.

*Second Exception.*—The testimony on both sides being closed, the plaintiff offered four prayers—the first, third and fourth of which were rejected; the second was granted. The objection to this prayer was abandoned at the argument.

The defendant offered five prayers—the first and second of which were granted; the following were rejected:

3. If the jury find from the evidence that the defendant placed his name on the back of the note sued on, as endorser, and that the plaintiff accepted him as security for the maker of said note, in the capacity of endorser on said note, then their verdict must be for the defendant, unless they find that payment of said note was duly demanded of the maker at maturity, and the same was not paid, and that due notice by protest was given to the defendant.

4. If the jury find from the evidence that the defendant placed his name upon the back of the note sued on, as endorser, then their verdict must be for the defendant, unless they find that payment of said note was duly demanded of the maker at maturity, and the same was not paid, and that due notice by protest was given to the defendant.

5. If the jury find from the evidence that the defendant placed his name on the back of the note sued on in this case, as security for Elisha J. Guyton, the maker of said note, and that at the maturity of said note the said Guyton offered to pay the same, and that the plaintiff did not accept the said payment, but did accept from the said Guyton the interest on said note, at eight per cent. per annum, and in consideration of the payment thereof, and of the payment of the same rate of interest for another year, agreed with the said Guyton that he should retain the money for which said promissory note had been given, for another year, then their verdict must be for the defendant.

The Court (GAREY, J.,) gave the following additional instruction to the jury:

If the jury shall find from the evidence that E. J. Guyton wished to obtain a loan from the plaintiff of one thousand dollars, and offered to give him a promissory note for the same, endorsed by a certain James S. Suter and Charles T. Guyton, and that said E. J. Guyton did not obtain said endorsements, but returned with the promissory note offered in evidence, with all the signatures now found thereon, including the name of the defendant, (if they find that the defendant had before that time signed his said name thereon;) and if they further find that said note was then passed to the plaintiff for an advance or loan, then made thereon, of one thousand dollars, then the defendant is bound as a maker of said promissory note, and the plaintiff is entitled to recover.

The defendant excepted to the granting of the said instruction, and to the rejection of his third, fourth and fifth prayers, and to the granting of the second prayer of the plaintiff. Judgment for the plaintiff. The defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Thomas S. Baer* and *John T. McGlone,* for the appellant.

The testimony of the defendant to show that he signed his name on the back of the note, as endorser, should have been allowed to go to the jury. The Court erred in excluding it.

The cases, almost without exception, concede that all the circumstances surrounding the making and endorsement of a note, similar to this, should be given in evidence to the jury, and especially the circumstances under which the name of the party sought to be charged, was endorsed upon the note. It was part of the transaction, a portion of the history of the negotiation, and necessary for a full understanding of the intentions of the parties. *Story on Promissory Notes, sections* 479, 480.

Ives *vs.* Bosley.

The cases in the American Courts where the defendant, signing a note under circumstances similar to those in this case, has been held liable as a joint maker or original promisor, seem, in the first instance, to have been cases where the note was not negotiable, and where on that account it would be impossible to hold the defendant as an endorser.  The Courts, therefore, in order to give effect to the contract, and prevent it from utterly failing, have allowed the defendant to be declared against as a joint maker.  But in case the note is negotiable in form, there is no difficulty in holding the defendant as an endorser, if the jury should find from the evidence that it was the intention of the parties that he should stand in that relation.  " This principle," says Judge STORY, " is admitted by all the decisions, that the interpretation ought to be just such as carries into effect the true intention of the parties, which may be made out by parol proof of the facts and circumstances, which took place at the time of the transaction. If the party endorsing the note intended at the time to be bound only as a guarantor of the maker, he shall not be deemed to be a joint promisor.  If he intended to be only a second endorser of the note, he shall not be held liable to the payee as a first endorser."  If the contract be one of endorsement, then the intention of the parties must be that the endorser shall have notice of non-payment, in order to fix the responsibility of such endorsement.  It would be contrary to the intentions of the parties, and an injury to the endorser to charge him as a joint maker.

An examination of the cases will disclose that, wherever the defendant has been held liable as a joint maker, it has been either because it was supposed that the law could not charge him as an endorser, or where the evidence showed that he had entered into some special agreement incompatible with that character.  There is no difficulty in this case in giving effect to the contract as one of endorsement.  *Story on Promissory Notes, secs.* 473–481 ; *Hall vs. Newcomb,* 3 *Hill,* 233 ; *Hall vs. Newcomb,* 7 *Hill,* 416; *Moore vs. Cross,* 19 *N. Y.,* 227 ;

*Hoffman & Rizer vs. Coombs,* 9 *Gill,* 284; 1 *Comstock,* 321; 13 *Smedes & M.,* 617.

The fifth prayer of the appellant should have been granted. Whatever might be the form in which the defendant should be declared against, he had a right to be treated as a surety, and he was entitled to any advantage belonging to that character; and if the creditor had done any act which could in law discharge a surety, he might prove that in his defence. The evidence in this case is that the money was offered to the appellee by the maker of the note when it was due, and that the appellee and Guyton, then entered into an agreement for the loan of the money for another year, at the same rate of interest. This was a binding agreement upon the appellee, and the appellant as surety was discharged from responsibility thereby. *Baker vs. Briggs,* 8 *Pick.,* 122–130; *Chute vs. Pattee,* 37 *Maine,* 102; *Wheat vs. Kendall,* 6 *N. H.,* 504; *Bailey vs. Adams,* 10 *N. H.,* 162; *Fowler vs. Brooks,* 13 *N. H.,* 240; *Cooper vs. Gibbs & Gordon,* 4 *McLean,* 401.

*N. Rufus Gill,* for the appellee.

The appellant undertook to show by parol testimony the circumstances under which he signed the note upon which this suit was brought, and to contradict the relation which upon the face of the note he bears to the transaction. This evidence was properly rejected by the Court below, both because the appellee was not present at the time, and therefore not bound by any condition or restriction imposed, and because it was not competent for the appellant to explain away or qualify his undertaking in writing, by parol. *Yates vs. Donaldson,* 5 *Md.,* 389; *Fentom vs. Pocock,* 5 *Taunt.,* 192; *Curstairs vs. Rolleston,* 5 *Taunt.,* 551; *Story on Promissory Notes,* sec. 418; *Byles on Bills,* (4 *Amer. Ed.,*) 310, (192;) *Nash vs. Skinner,* 12 *Vermont,* 219.

It having been shown that the name of the appellant was written upon the back of the note in question before it was delivered to the appellee, the conclusion of the law attached—

that he *was an original promissor,* and parol evidence was not admissible to exclude that conclusion. *Essex Co. vs. Edmands, &c.,* 12 *Gray,* 273.

Is the appellant to be held as a joint maker, or liable only as endorser after due protest? The testimony in the case shows clearly that Bosley refused to make the loan of the $1,000 sought by Guyton, until the note in question, with the signature of the appellant upon it, was presented to him. The signing by the appellant was therefore the condition precedent upon which the loan was made, and *to him alone credit was given.* The law presumes, under the circumstances of the case, that Ives put his name upon the note for the purpose of giving it credit, by becoming liable to pay in some capacity and on some terms. He cannot be an endorser, for he is not payee, and there can be no endorser until the payee has endorsed and negotiated the note. He was therefore *a principal in the transaction,* and so accepted and considered by Bosley at the time he received the note and made the loan. If an endorser only, Bosley, as the first endorser, (if he had negotiated the note,) would have been liable to him, and thus the whole purpose of Ives' signature, as shown by the evidence, would have been defeated, and Bosley made to assume a liability which he could never have thought of. *Violett & Dempsey vs. Sullivan,* 6 *Gill,* 181 ; *Rey vs. Simpson,* 22 *How.,* ( *U. S.,*) 341 ; *Mories vs. Bird,* 11 *Mass.,* 435 ; *Baker vs. Block,* 30 *Mo.,* 225 ; *Story on Promissory Notes,* (6 *Ed.,*) 635, *note* 2 ; *Essex Co. vs. Edmands,* 12 *Gray,* 273 ; *Childs vs. Wyman,* 44 *Me.,* 433 ; *Quinn vs. Sterne,* 26 *Ga.,* 223 ; *Edwards on Proms. Notes, and B. of Exchg.,* 273 ; *Nash vs. Skinner,* 12 *Vt.,* 219.

The fifth prayer of the appellant is framed upon the theory, that the acceptance of interest by Bosley from Guyton after the note became due, and the agreement to permit him, Guyton, to retain the money for a longer time, at eight per cent. interest, was a discharge of Ives from his liability. This is of course contended for, upon the theory that Ives is only a surety. But the facts of the case and the authorities establish

beyond all question that he is not a surety, but a principal and liable as such.  All the parties upon the note are principals, and if one is discharged, all are.  *Yates vs. Donaldson*, 5 *Md.*, 389.

But even if the appellant were surety, the proposition of his fifth prayer is not sound.  The agreement to continue the loan was absolutely void for want of *legal consideration*, and could not therefore have been enforced by either.  While an agreement to grant further time may, under certain circumstances, operate to discharge an *endorser* or *surety*—yet it is not every agreement to indulge, which will have that effect. It must be an agreement based upon a good, legal and sufficient consideration ; one that is binding between the parties, and is capable of being enforced.  An agreement for a usurious consideration is *nudum pactum*.  *Yates vs. Donaldson*, 5 *Md.*, 389; *Hoffman & Rizer vs. Coombs*, 9 *Gill*, 285; *Hunter vs. Van Bomhorst & Co.*, 1 *Md.* 513; *Mauley vs. Boycot*, 18 *Egn. L. & E.*, 351; *Perfect vs. Musgrave*, 6 *Price*, 111; *Story on Proms. Notes*, sec. 421; *The Planters' Bk., P. G. Co. vs. Sellman*, 2 *G. & J.*, 230.

BRENT, J., delivered the opinion of the Court.

This action was instituted by Bosley, the appellee, to recover the amount of a promissory note, dated the 6th of April, 1868, for $1,000, payable twelve months after date, to his order.  It is signed by Elisha J. Guyton and endorsed in blank by Charles T. Guyton and William M. Ives, the appellant.

The note was delivered to Bosley by Guyton, the drawer, to secure the payment of $1,000, which he had loaned him, and the principal question presented in the case is the character of Ives' liability—the appellee, Bosley, claiming that he is liable as maker of the note, while the appellant, Ives, insists that he only became liable as endorser.

After the plaintiff had proved the signatures to the note, and that they were all upon it when it was brought and delivered to him for the payment of the money which he then

loaned, the defendant offered to prove, by his own testimony, that at the time he placed his name upon the back of the note, he signed it as *endorser.* Upon objection being made by the plaintiff to this testimony, the Court ruled it inadmissible, and this forms the subject of the first bill of exceptions.

The obligation of Ives, as established by the proof of the plaintiff, is clearly that of an original promissor. At the time of the transaction between Bosley and Guyton, which resulted in the loan to the latter of $1,000, the note in question was delivered to Bosley, filled up with his name, as payee, signed by E. J. Guyton, and endorsed in blank by Charles T. Guyton and Wm. M. Ives, the appellant. It was delivered to Bosley to secure the money which he had loaned, and was so accepted by him. These facts establish, by conclusion of law, the responsibility of Ives as a joint maker or original promissor. *Essex Co. vs. Edmands, et al.,* 12 *Gray,* 274; *Sylvester, Ex'r. vs. Downer,* 20 *Vermont,* 356; *Rey, et al. vs. Simpson,* 22 *How.,* 341; *Sullivan vs. Violett and Dempsey,* 6 *Gill,* 181. It is true, as was urged in the argument, that the contract entered into by a blank endorsement, will generally receive such a construction as will give effect to the intention of the parties, and that parol evidence will be admitted to show and explain what liabilities were intended to be assumed at the time of the transaction. *Story on Prom. Notes,* secs. 58, 59; 20 *Verm.,* 359; 22 *Howard,* 351. If, however, the contract set up is different from that which attaches by presumption of law, it must be established by proof, showing that both parties, promissor and promissee, so intended and agreed. Were it otherwise, a creditor who, in the utmost good faith, takes a note similar to the one in the present case, could readily be defrauded by an agreement between the drawer and a blank endorser. In the case of *Rey, et al. vs. Simpson,* above referred to, the Supreme Court of the United States say: " When a promissory note, made payable to a particular person or order, * * * is first endorsed by a third person, such third person is held to be an original promissor,

guarantor or endorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered a joint maker of the note. On the other hand, if his endorsement was subsequent to the making of the note, and he put his name there at the request of the maker, pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as guarantor. But if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his endorsement would be inoperative until it was endorsed by the payee, he would then be liable only as a second endorser in a commercial sense, and as such, would clearly be entitled to the privileges which belong to such endorsers." Applying these principles to the present case, it is clear that the defendant cannot avoid the liability of a joint promissor, which the law has attached to his blank endorsement, unless he proves a different understanding *of all the parties.* The conclusion, therefore, necessarily follows, that testimony which does not tend to establish such a general understanding, is inadmissible. The proof, offered and rejected by the Court below, was, that Guyton, the drawer of the note, "came to the store of the defendant and asked him to endorse the note in question for his, Guyton's benefit, and that he signed his name on the back of said note as endorser." It is not pretended that Bosley was present at any such agreement, or knew of it, or in any way assented to it.

The next exception is taken to the granting of the second prayer of the plaintiff, the rejection of the third, fourth and fifth prayers of the defendant, and the additional instruction given by the Court.

The objection to the second prayer of the plaintiff was abandoned at the argument, and this brings us to the con-

sideration of the propriety of rejecting the third, fourth and fifth prayers offered by the defendant. Both the third and fourth prayers proceed upon the theory that the defendant, Ives, signed the note as endorser. There is no testimony in the case from which the jury would have been justified in reaching such a conclusion. All the proof fixes upon him the liability of maker, and in that capacity only was it attempted to hold him liable. As there was no testimony, therefore, to support these prayers, they were properly rejected.

The fifth prayer of the defendant, which presents the question whether the defendant was discharged from liability by an agreement of the plaintiff to allow the drawer of the note to retain the money after he had offered to pay it, could not have been granted upon the evidence in the case. The theory of the prayer is made to rest upon the fact that the defendant was security only, and submits to the jury to find whether he was so or not. This was clearly not a question proper to be submitted, upon the evidence in the case, to their finding. No matter what may have been the equities between Guyton and Ives, so far as this plaintiff was concerned the legal relation and liability of Ives to him, if any, was that of joint maker or original promissor upon the note. But apart from this, the evidence in the case did not justify the granting of the instruction, even assuming that Ives was to be treated as a security. The only evidence, in regard to an extension of time after the maturity of the note, was the testimony of Guyton, who proved that when the note fell due he told Bosley he was ready to pay it, "but would rather keep the money if Bosley did not want it; that Bosley said he didn't want it—all he wanted was the interest; that witness and Bosley had a conversation about the rate of interest for the next year; that witness asked Bosley if he couldn't take less, and Bosley answered he couldn't take less than the same rate, eight per cent., and that witness paid him the interest for the year past, and that Bosley never made any further applica-

tion for payment until April, 1870." There is certainly nothing disclosed by this proof, which establishes any such contract, as would have prevented a suit by Bosley against Guyton, or would have deprived Ives of the right of paying the note at any time after its maturity. The agreement was a mere promise of indulgence without any consideration to support it, and not therefore a binding obligation upon either party. The terms of the loan were not changed, or a new debt created between the parties. The interest spoken of was the rate that had been fixed upon and understood for the first year of the loan, and does not seem to have been a matter mentioned by the parties until after Bosley had promised to give further time for the payment of the debt. But even if the time had been extended upon the express understanding that eight per cent. interest was to be paid, the agreement would still be treated in law as *nudum pactum*. The payment of usurious interest cannot be enforced, and a promise to pay it cannot therefore be held to constitute a good and legal consideration. The question presented by this prayer arose upon a very similar state of facts in the case of *Hoffman & Rizer vs. Coombs*, 9 *Gill*, 284. In that case the defendants, who had endorsed the promissory note sued upon, claimed that they were discharged from all liability on it, upon the ground that the payee and holder of the note had agreed that the drawer, who offered to pay it at maturity, should retain the money for a longer time. But this Court, in affirming the ruling of the Court below, held that the agreement was *nudum pactum*, and did not operate to discharge the defendants from liability. The present prayer comes within the doctrine announced by this decision, and we think it was properly refused.

It follows from the views already expressed, that the additional instruction given by the Court properly announces the law of this case. It presents for the finding of the jury the important facts given in proof, and if they are found to be true, the conclusion of law attaches, that Ives was an original

promissor or maker of the note sued upon, and as such was liable in the present action to Bosley, the payee and holder.

Finding no error in the rulings of the Court below the judgment will be affirmed.

*Judgment affirmed.*

(Decided 28th February, 1872.)