**WILLIS et al. v. FIRST NAT. BANK OF BURKBURNETT et al. (No. 2310.)**

(Court of Civil Appeals of Texas. Amarillo. April 9, 1924. Rehearing Denied June 4, 1924.)

**1. Partnership ⬤⟶146(2)—Indorsement of partnership note by individual partners does not change liability as between themselves.**

That individual partners indorsed partnership note, instead of signing it on its face, does not change their liability as between themselves.

**2. Stipulations ⬤⟶17(1)—Plaintiff's stipulation that it would prosecute suit on note against certain partners as indorsers only does not affect liability of partners among themselves.**

Stipulations by bank, suing on partnership note, that it would prosecute suit against certain partners as indorsers only, is binding on bank only and does not affect partners' liability among themselves.

**3. Evidence ⬤⟶417(9)—Evidence of contract, material parts of which rested in parol, held admissible.**

Where pleadings showed that written release and note were only parts of alleged contract, material parts of which rested in parol, court did not err in permitting evidence of its terms.

**4. Partnership ⬤⟶297—General accounting held not necessitated by controversy between certain partners.**

General accounting of partnership business *held* not necessitated by controversy between two partners as to whether one purchasing partnership interest of other assumed latter's portion of certain partnership debt or paid it to procure share in amount of note taken by seller in payment of indebtedness to another partnership between them.

**5. Trial ⬤⟶350(4)—Assumption of partner's liability for debts, payment of portion of indebtedness under duress, and accord and satisfaction, held for jury.**

In suit on partnership note, issues as to assumption of partner's share of indebtedness by partner purchasing his interest, payment of former's portion of certain indebtedness by latter under duress, and former's defense of accord and satisfaction, *held* for jury as present ultimate facts.

**6. Partnership ⬤⟶217(2)—Evidence of market value of partnership lease held admissible on issue as to terms of sale of partners' interest.**

In suit on partnership note, evidence of market value of partnership lease at time of sale of one partner's interest to another *held* admissible as affecting former's contentions that he was to receive certain sum in cash, which latter claimed was to be paid only in case lease yielded as much to such interest, and that he was to be relieved of liability for company's debts.

**7. Trial ⬤⟶255(4)—Parties not desiring limitation of testimony to particular point should request special instruction.**

Parties not desiring to have effect of testimony limited to particular point, as to which material, should request special instruction.

**8. Accord and satisfaction ⬤⟶27—Issue held for jury.**

In action on partnership note, issue of accord and satisfaction, based on written release of portion of judgment against partnership through efforts of partner selling interest to copartner in alleged reliance on latter's promise to pay off any claims against seller, *held*, question of fact for jury.

**9. Appeal and error ⬤⟶231(2)—Omissions from answer held waived by failure to urge special exception.**

Defects in answer leaving blanks for amounts alleged to have been paid by defendants to plaintiff and on judgment *held* waived by failure to urge special exception on such ground.

**10. Appeal and error ⬤⟶1039(4)—Omission from answer of amounts alleged to have been paid held harmless, in view of evidence thereof.**

Defects in answer leaving blanks for amounts alleged to have been paid to plaintiff and on judgment by defendants *held* harmless, in view of evidence of such amounts.

On Motions for Rehearing.

**11. Abatement and revival ⬤⟶17—Another suit pending held waived as defense by failure to plead it in abatement.**

Suit pending in different court between partners sued on note to determine their rights and liabilities for partnership debts *held* waived as defense by failure to plead it in abatement of cross-action.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Appeal and error ⬰882(6)—Defendant setting up contract with codefendant cannot complain of plaintiff's and codefendant's judgment against him.**

Defendant setting up contract with codefendant and affirmatively invoking judgment on it in suit against partnership on partnership note cannot complain of plaintiff's or codefendant's failure to resist litigation of such matter, nor of judgment against him; error, if any, being invited.

**13. Pleading ⬰147—Court may adjudicate any matter connected with or growing out of same transaction in one suit if parties are willing.**

Trial court, in exercise of discretion, may adjudicate any matter connected with or growing out of same transaction in one suit, if parties are willing.

**14. Appeal and error ⬰267(1)—Adjudication of matter growing out of same transaction not reviewed unless excepted to by party not waiving right to object.**

Court's action in adjudicating matter connected with or growing out of same transaction in one suit will not be reviewed, unless properly excepted to by party who has not waived right to object.

**15. Partnership ⬰297—General accounting held unnecessary to determine rights under personal contract between certain partners.**

In suit on partnership note, rights of certain partners under contract for sale of interest of one to other *held* not affected by pending suit for accounting between all members of firm, so as to necessitate general accounting to determine such rights.

**16. Accord and satisfaction ⬰26(3)—Finding of no accord and satisfaction held supported by documentary evidence.**

In action on partnership note, finding that there was no accord and satisfaction between certain partners as to matters arising under contract for sale of interest of one to other, *held* supported by documentary evidence.

**17. Partnership ⬰219(1)—Partners indorsing note after indorsement by copartners held not entitled to judgment against latter as prior indorsers.**

Partners indorsing partnership note after indorsement by copartners *held* not entitled to judgment over against latter as prior indorsers, under Vernon's Ann. Civ. St. Supp. 1922, art. 6001—64, in suit for joint and several judgment against all as partners, though plaintiff agreed to prosecute suit against certain partners as indorsers only.

**18. Partnership ⬰146(2) — Partners indorsing partnership note individually liable as joint makers.**

Partners indorsing partnership note individually are liable as joint makers.

**19. Courts ⬰95(1)—Decisions of courts of states from which act construed was not adopted not binding or persuasive.**

Decisions of court of states, from which Negotiable Instruments Act was not adopted, is not necessarily binding or persuasive on Texas courts in construing such act.

**20. Partnership ⬰219(3)—Partners not denying liability as such under oath cannot question judgment against them as such.**

In suit against partners as such on partnership note, defendants not denying liability as partners under oath, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1906, subd. 6, cannot question judgment against them as partners.

**21. Partnership ⬰212—Plea setting up partner's rights as against other partners as coindorsers of note cannot be taken as plea denying liability as partner, though verified.**

In suit on partnership note against partners indorsing it individually, plea setting up rights of certain partners as against coindorsers cannot be taken as plea denying liability as partners, though verified.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by the First National Bank of Burkburnett against W. T. Willis, E. S. Carey, and others, in which defendants Carey and others filed cross-action against defendant Willis. From judgment against defendants Willis and others, they appeal. Reformed, and affirmed as reformed, on condition of remittitur.

Guy Rogers and Arch Dawson, both of Wichita Falls, for appellant Willis.

Guy Rogers, of Wichita Falls, for appellants Childers and Rogers.

Fitzgerald & Hatchitt, of Wichita Falls, for appellee.

HALL, C. J. The appellee bank filed this suit to recover upon a note in the sum of $14,082.41, signed Carey Bros. Oil Company, by Guy Rogers. The note is indorsed by the following parties: C. W. Carey, E. S. Carey, R. R. Carey, Guy Rogers, W. T. Willis, and J. E. Childers. It is alleged that the indorsers were partners, doing business under the firm name of Carey Bros. Oil Company.

The appellant Willis filed an answer, denying his liability upon the note, and alleging that he sold his interest in the partnership on the 20th day of May, 1920, to E. S. Carey, under a contract which bound the said Carey to assume and pay his portion of the note sued upon, together with his portion of certain indebtedness to the City National Bank of Wichita Falls; and, in addition thereto, the said Carey promised to pay him $2,000 for his interest in the partnership property. He further alleges that he indorsed the note sued upon for the accommodation of E. S. Carey, and prayed for judgment over against Carey by virtue of the terms of the contract of sale. The defendant E. S. Carey admitted that he bought the interest of Willis in the Carey Bros. Oil Company, but denied the

⬰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

contract to be as alleged by Willis, and averred that the agreement was that he was to pay $2,000 for said interest, in the event the lease which was owned by said partnership yielded enough to said interest to pay said $2,000; that said Willis was not to be relieved of any of the indebtedness of the Carey Bros. Oil Company existing at that time, but that he was to pay his portion thereof, including his pro rata share of the note in suit and also his share of about $30,-000 indebtedness to the City National Bank. He alleged that he was compelled to pay Willis' portion of the indebtedness to the City National Bank, and did pay it, because of the fact that he and Willis had another partnership known as Carey-Willis Drilling Company, and that the said Willis had collected $72,000 worth of indebtedness due said partnership by taking a promissory note covering said $72,000, payable to himself, instead of the firm, and that notwithstanding the contract with Willis for the purchase of Willis' interest in the Carey Bros. Oil Company, the said Willis refused to allow him to have any part of the $72,000 unless the defendant would pay his portion of the City National Bank of Commerce judgment and his portion of the note herein sued on. Carey further alleged that in order to get his share of the $72,000, he paid these claims under protest, and was seeking to recover said sums in this suit.

By first supplemental answer the defendant Willis alleged that on or about the 3d day of February, 1922, he made a complete settlement with his codefendants, Carey Bros., in so far as their claim set up in their cross-actions are concerned, said settlement being made with particular reference to E. S. Carey, whereby and wherein it was again agreed and understood, as it had been originally on the 20th day of May, 1920, that all of the liability of the said Willis in any and all obligations of Carey Bros. Oil Company, arising against him by virtue of his at one time being a member of said concern, and an indorser of some of its paper, would be paid off, discharged, and satisfied by E. S. Carey, primarily with the codefendants, C. W. Carey and R. R. Carey, as his sureties; that in pursuance of said contract and as part consideration therefor he assumed in his own right and as his own personal liability and secured the release of E. S. Carey from a joint obligation to the Wichita State Bank & Trust Company, which said obligation he has since paid in full; that but for the agreement of the Carey Bros., as aforesaid, and their payment of the sums of money in their cross-action set out, and their contract with this defendant to pay all claims of Carey Bros. Oil Company, in any way chargeable to this defendant, this defendant would not have assumed the great liability nor secured the release of said Carey

from the aforesaid obligation due the Wichita State Bank & Trust Company; that in further pursuance of said agreement and understanding and as part of the consideration therefor, this defendant secured for the said Carey Bros. a complete release except as to four-ninths thereof of a judgment approximating $30,000 due the City National Bank of Commerce for which said Careys were primarily liable, jointly and severally, with this defendant; that he procured such release relying upon the promise of said codefendants to pay off all claims, accounts, choses in action, and judgment that might be or arise for payment against defendant as aforesaid; that in pursuance of said contract and agreement this defendant released for the account and benefit of the aforesaid codefendants, a large sum of money in his then possession, which was accepted by said codefendants and which was surrendered in full reliance upon the above-mentioned contract and agreement of assumption and indemnity, and but for which this defendant would not have released said money. All of which facts this defendant pleads in bar and in estoppel of the matters claimed by his codefendants in their cross-action.

The defendant further pleaded that he signed the obligation as an indorser only and at the request and for the accommodation of his codefendant E. S. Carey, for whom he is merely an accommodation surety. The defendants Guy Rogers, W. T. Willis, and J. E. Childers pleaded in abatement of the plaintiff's cause of action the fact that there was now pending in the Eighty-Ninth district court a suit between the same parties involving the same subject-matter, in which the bank had intervened, asking a judgment on the note herein sued upon. The judgment of the court contains this recital:

"Thereupon the defendants, Guy Rogers, W. T. Willis and J. E. Childers, presented to the court their plea in abatement filed herein, whereupon it was announced in open court that plaintiff would prosecute its suit against the defendant as indorsers only, whereupon said plea in abatement was overruled."

By a second supplemental petition the defendant Willis alleged that as to all the matters and things set up in the cross-action filed by the defendants, E. S., C. W. and R. R. Carey, there had been a settlement and accord and satisfaction, and all parties thereto had been discharged; that such differences were settled and satisfied during the first of the year 1922, wherein as a part of said general settlement it was agreed that W. T. Willis should be protected from the Carey Bros. Oil Company's obligations and his liability thereon, and that his part thereof would be and was paid by E. S. Carey in pursuance of said settlement. The case was submitted to the jury upon special issues, in response to which the jury found as follows:

"(1) At the time the defendant E. S. Carey acquired the one-tenth interest of the defendant W. T. Willis of the Carey Bros. Oil Company, it was not agreed and understood that E. S. Carey would assume and pay off W. T. Willis' portion of all outstanding indebtedness.

"(2) At the time E. S. Carey paid the one-ninth part of the indebtedness in question, he did so because W. T. Willis refused to allow him to have his interest in the said $72,000 note executed by R. M. Waggoner to W. T. Willis.

"(3) There was no settlement in January, 1923, had between W. T. Willis and E. S. Carey of differences existing between, including the matter in controversy between them in this lawsuit.

"(4) At the time E. S. Carey bought a one-tenth interest in Carey Bros. Oil Company from W. T. Willis, he (E. S. Carey) did not agree to assume the then indebtedness against the interest which he bought."

[1, 2] Guy Rogers and J. E. Childers pleaded that they were subsequent indorsers to the Carey Bros. and were not liable as original makers. The suit is against all of the defendants as partners. The note upon which the action is based is a partnership debt, and the fact that the individual partners indorsed the note, instead of signing upon its face, does not change their liability as between themselves. There was an agreement made in open court and recited in the judgment, to the effect that the bank would prosecute its suit against the defendants Guy Rogers, W. T. Willis, and J. E. Childers, as indorsers only. This stipulation was entered into in consideration of the waiver by the above-named defendants of a plea in abatement which they had filed, setting up the fact that the matters in controversy in this suit were also issues in a different suit between the same parties pending in the Eighty-Ninth district court. This stipulation is binding upon the bank alone, and under its terms the liability of the above-named three defendants to the bank is governed by the law as it applies to the indorsers.

[3] The pleadings of both Willis and E. S. Carey show that the written release and the note given by Carey to Willis, for $2,000, are only parts of the contract referred to in their respective pleadings. The material parts of the contract rest in parol, and the court did not err in permitting the evidence from both parties as to its terms. Willis alleged a certain contract, and even under a general denial Carey should have been permitted to prove an entirely different contract.

[4] It was not necessary in this case for the court to require an accounting of the partnership business. Transactions in two different partnerships are involved in the suit. Willis and E. S. Carey, doing business under the firm name of Willis-Carey Drilling Company, had ceased operations, and complete settlement of its affairs had been made, at a time when Willis and E. S. Carey owned the entire business. Carey Bros. Oil Company, the partnership involved in this suit, was originally composed of ten partners —one of them was insolvent and had left the state. The case was tried upon the theory that the remaining nine partners were responsible each for one-ninth of the indebtedness sued upon. The controversy between Willis and E. S. Carey is based upon a separate and individual agreement between them, in which none of the other partners are in any way interested, and therefore a general accounting of the business of Carey Bros. Oil Company was unnecessary. Lingner v. Gaines (Tex. Civ. App.) 244 S. W. 205; Peck v. Powell (Tex. Civ. App.) 259 S. W. 640.

[5] The court did not err in submitting the issues above set out. The first issue, as to the agreement and understanding that Carey would assume and pay off Willis' portion of the outstanding indebtedness of the Carey Bros. Oil Company, was made by the pleadings and the evidence. The second issue submitted to the jury the question of duress, which was also raised by the pleadings and evidence of both parties. The third issue called for a finding upon the defense of accord and satisfaction pleaded by Willis. These issues present ultimate facts for the determination of the jury, and we think were properly submitted.

[6, 7] The evidence as to the market value of the lease owned by the partnership at the time of the sale was material evidence affecting the contention that Willis was to receive $2,000 cash and be relieved of liability for any of the debts of the company, and, if the appellants did not desire to have the effect of the testimony limited to that point, it was their duty to request a special instruction.

[8] The next contention to be considered is that where it is undisputed that a written contract was entered into between two parties which was a part of the general settlement of various matters existing between them, and where it is provided in said writing that a certain indebtedness over which there was a controversy was determined and declared by said contract to be due and owing by one of the parties, and where that party accepted said contract and received benefits under it and other party acting under it relinquished valuable rights and paid out money in accordance therewith, the contract was supported by a valuable consideration and should have been given controlling effect by the court in settling the issues as to whether said indebtedness was the indebtedness of said party upon whom it was placed by said contract. We presume that this contention is based upon the written release given by the bank to the three Careys. It appears from the record that Ed Carey paid two-ninths of the judgment which the City National Bank of Commerce held against the Carey Bros. Oil Company, and

each of his brothers paid one-ninth. The record shows that they did this in order to be released from any further liability on this judgment. Willis signed this release at the request of the attorney of the bank. The release recites that it shall in no wise affect the joint and several liability of W. T. Willis, J. E. Childers, H. D. Lewis, and M. J. Michaelias as to the balance due on said judgment. The record shows that Willis agreed that the release should in no wise affect his joint and several liability for the remainder of the judgment, but that he assented to it without prejudice to his right of contribution against the Carey Bros. for any amount which he might have to pay upon any obligation of Carey Bros. Oil Company that it should not affect his right of contribution against any of the other partners of the Carey Bros. Oil Company. This writing, in the light of the oral testimony from both parties, has no bearing upon the question of accord and satisfaction pleaded by Willis. The jury found that there had been no accord and satisfaction, and there is ample testimony in the record to sustain the finding. Under the evidence it was purely a question of fact. If there was no accord and satisfaction, then the issue of duress of property becomes immaterial. E. S. Carey pleaded duress as a defense in avoidance of the plea of accord and satisfaction set up by Willis.

[9, 10] There are some blanks left in the first amended original answer, filed by the Careys, where they allege the amounts which have been paid to the bank and upon the judgment, but no special exception was urged to the pleading on this ground, and the defect is waived, and, moreover, it is harmless, since the evidence shows the amounts which should have been inserted.

It appears that the judgment as entered below is excessive in the sum of $247.35. If a remittitur of that amount is entered in this court within the next 15 days, the judgment will be reformed, fixing the liability of Rogers, Childers, and Willis, as indorsers, and as reformed will be affirmed. If a remittitur of said sum is not entered within 15 days from this date, the judgment will be reversed, and the cause remanded.

BOYCE, J., not sitting.

## On Motions for Rehearing.

HALL, C. J. [11-15] The first contention in appellant Willis' motion is because there is some evidence in the record showing that another suit is pending in a different court between Willis and the Careys to determine their respective rights and liabilities for the debts of the Carey Bros. Oil Company; that the matter should not have been determined in this case. If there is any such suit, Willis failed to plead that fact in abatement of E. S. Carey's cross-action against him here-

in, and has thereby waived it as a defense. York's Admr v. Gregg's Adm'r, 9 Tex. 85; General Bonding & Casualty Insurance Co. v. Lawson (Tex. Civ. App.) 194 S. W. 1020; Blassingame v. Cattlemen's Trust Co. (Tex. Civ. App.) 174 S. W. 900. Without deciding the question, we suggest that the bank, or even the other defendants, might have successfully resisted the attempt of Willis and E. S. Carey to litigate their purely personal matter in this suit; but their failure to do so is no ground for complaint by Willis, especially when by his answer and cross-petition he first injected the issue into the case by setting up his contract with E. S. Carey and affirmatively invoking the judgment of the court upon it. Having lugged it into the case himself, it does not lie in his mouth to complain of a judgment against him in a motion for rehearing, either in the trial court or in this court. If the court erred in adjudging the issue, he invited it, or rather compelled it. If all parties were willing to do so, the trial court, in the exercise of his discretion, could adjudicate any matter connected with or growing out of the same transaction in one suit. Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1040; Id. (Tex. Civ. App.) 135 S. W. 730. The court's action in doing so will not be reviewed here unless it has been properly excepted to by one who has not waived his right to object. Williams v. Baldwin (Tex. Civ. App.) 202 S. W. 975; Scott v. F. & M. National Bank (Tex. Civ. App.) 66 S. W 485. Even if there is another suit for an accounting pending between the members of the firm of Carey Bros. Oil Company, it does not appear from the record in this case that the rights of Willis and E. S. Carey, under their personal contract, are in any way involved in it or that it is necessary to go into the partnership accounts to determine such rights. Peck v. Powell (Tex. Civ. App.) 259 S. W. 640; Rowley's Partnership, §§ 746, 748; 20 R. C. L. Partnership, §§ 140, 151. The direful consequences which appellant suggests in his motion may result if this judgment is affirmed should have deterred him from inviting and compelling the court to adjudicate the issues in the first instance.

[16] This court did not decide that there had been an accord and satisfaction between appellant and E. S. Carey, but the jury did, and, there being evidence to support the findings, we approve it. While on the witness stand, E. S. Carey denied that there was an accord and satisfaction of the matters pleaded by Willis, and the documentary evidence sustains him. This evidence, taken in its chronological order, is in substance as follows:

On May 20, 1920, E. S. Carey executed and delivered to W. T. Willis a plain promissory note for $2,000 and the record shows that it has been paid. Willis agreed in writing to assume and pay off as his own obligation the note executed by the Carey-Willis Drill-

ing Company to the Wichita State Bank & Trust Company, upon which E. S. Carey was liable as a partner, and the bank, by indorsement on the writing, accepted Willis as sole obligor and released E. S. Carey. On the same day, E. S. Carey delivered the following writing to Willis and R. M. Waggoner:

"This is to certify that I have received in full consideration for my interest in the $72,000 note executed by R. M. Waggoner and payable to W. T. Willis, dated October 8, 1920, and that I now neither claim, own or demand any amount from either of you by virtue of being at one time interested in the proceeds of said above described note."

E. S. Carey's plea of duress relates to these two instruments. On February 11, 1922, Carey and Willis executed in writing a full and complete settlement of all matters relating to the Carey-Willis Drilling Company, of which they were the sole owners, in which Willis paid Carey $200 and Willis assumed the outstanding indebtedness against that partnership. It appears that prior thereto, on February 3d, the Careys had paid four-ninths of the note sued on to the plaintiff bank and obtained a written receipt therefor. On February 18, 1922, the City National Bank of Commerce executed a written release to the Careys of their liability upon a judgment for $29,903.30, which said bank held against the Carey Bros. Drilling Company, in consideration of the payment by the Careys of the sum of $11,274.88. This release, signed by the vice president of the bank, recites that the Careys are released except as to $2,222.20, and that there shall be applied toward the payment of said last sum four-ninths of the sale price of the oil and gas lease which is to be sold February 7, 1922, and if such price is insufficient to pay the pro rata balance due on the judgment from the Careys, then they are to pay such balance, and that if the lease sells for more than said sum they shall be entitled to such excess. The release further provides:

"This agreement of release shall in no wise affect the joint and several liability of W. T. Willis, J. E. Trigg, Guy Rogers, J. E. Childers, H. D. Lewis, and M. J. Michaelias as to the balance due on said judgment."

Before this release was delivered, it was submitted to the appellant Willis, and he agreed that its execution should in no wise affect his joint and several liability for the remainder of the judgment as to the bank, and recites further as follows:

"Without prejudice, however, to my rights of contribution against the said E. S. Carey, R. R. Carey and C. W. Carey, as to any amount which I may have to pay as an obligation of the Carey Bros. Oil Company, and shall not affect my right to contribution as against any of the other partners of the Carey Bros. Oil Company."

This agreement is appended to the release, and shows clearly that Willis reserved all rights against E. S. Carey. On October 18, 1922, the following instrument was executed by Willis and E. S. Carey:

"Whereas, in cause No. 11990-c, wherein E. S. Carey et al. are plaintiffs and T. T. Reese et al. are defendants, it appears that a conflict of interest may develop between plaintiffs W. T. Willis and E. S. Carey, both being represented by the same attorney: It is therefore agreed that as between said parties the judgment in said cause for an accounting and contribution shall not be conclusive, and they expressly reserve the right, should they so desire at a later date, to litigate their respective rights as against each other pertaining to their interests in Carey Bros. Oil Company, in any subsequent suit in any court of competent jurisdiction and all pleadings as against each of said parties shall be withdrawn without prejudice to either of said plaintiffs."

Even if it could be contended that any of the instruments above mentioned amounted to an accord and satisfaction, this writing would set it aside and open the door to further litigation, and the fact that Willis has injected the issues between them into this case is conclusive against his contention that there was an accord and satisfaction. These documents corroborate E. S. Carey's testimony to the effect that there has been no accord and satisfaction, and the jury could not very well have found otherwise. It is unnecessary to discuss the sufficiency of the pleadings and the evidence upon the issue of duress in E. S. Carey's execution of the $2,000 note and the relinquishment of his interest in the $72,000 note in the matter of the settlement of the Carey-Willis Drilling Company partnership. That is another story with which we are not concerned in this case.

[17] Guy Rogers and J. E. Childers, in their joint motion for rehearing, insist that because they indorsed the note, and because their names appear as indorsers after the signatures of the three Careys, they are entitled to recover against the Careys whatever amount they may have to pay, and that the judgment should be reformed here, entitling them to recover against all prior indorsers. There was no pleading by either of the Careys or any other codefendant, setting up any special agreement between the indorsers as to their liability inter sese. Their contention in this court is based upon V. S. C. S. art. 6001—64, of the Negotiable Instruments Act, which provides that—

"Where a person, not otherwise a party to an instrument places thereon his signature in blank before delivery he is liable as indorser, in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. (2) If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer. (3)

If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

Rogers and Childers pleaded that they were subsequent indorsers to the Careys. The bank sued all of the defendants, including Rogers and Childers, as partners and prayed for judgment jointly and severally against them as such. The suit was not against any of the defendants as indorsers. When Rogers, Childers, and Willis filed a plea in abatement, alleging that there was another suit between the same parties involving the same subject-matter, wherein the bank was an intervener, it was agreed, as stated in the original opinion, that the bank would prosecute its suit against said defendants as indorsers only. Whereupon the plea in abatement was overruled. As stated in the original opinion, this stipulation binds only the bank. It could not affect the liability of the partners amongst themselves. The suit being against all the defendants, as partners, upon a note signed in the copartnership name, every member of the firm was jointly and severally liable for the full amount. Miller v. McCord (Tex. Civ. App.) 159 S. W. 159.

[18-21] Where a note is executed by a partnership in the firm name and the partners indorse it individually, they become joint makers and are liable as such. Thompson v. Young, 90 Md. 72, 44 Atl. 1037; Burke v. Jefferson Bank, 121 Ark. 633, 180 S. W. 500.[1] These appellants cite the case of National Exchange Bank v. Lubrano, 29 R. I. 64, 68 Atl. 944, as being in point. Reference to that case shows that only one partner indorsed the note. The rights of several partners inter sese was not in the case and was therefore not discussed. We find the same state of facts in the case of Fourth National Bank et al. v. Mead, 216 Mass. 521, 104 N. E. 377, 52 L. R. A. (N. S.) 225. What is said in that case, and also in the case of Faneuil Hall N. Bnk. v. Meloon, 183 Mass. 66, 66 N. E. 410, 97 Am. St. Rep. 416, with reference to a "person, not otherwise a party to an instrument," within the meaning of the above-quoted section of Negotiable Instruments Act, does not apply to the facts of this case. Since the Negotiable Instruments Act was not adopted from either Rhode Island or Massachusetts, the decisions of the courts of those states are not necessarily binding or persuasive upon the courts of Texas in construing the act. According to the Miller, Thompson, and Burk Cases, supra, every member of a partnership becomes a party to an instrument signed in the partnership name, since the payee of such a note is entitled to hold each partner jointly and severally. As stated, Rogers and Childers were sued as partners. They did not deny their liability as partners under oath, as required

[1] Reported in full in the Southwestern Reporter; not reported in full in 121 Arkansas Reports.

by the statutes (V. S. C. S. art. 1906, subd. 6), and having failed to do so, they cannot be heard to question the judgment of the court rendered against them as partners. Their unsworn plea, setting up their rights as against their coindorsers could not be taken as a plea denying their liability as partners, even if they had verified it.

The motions for rehearing are overruled, and the judgment in the court below, less the amount remitted in this court, is affirmed.

BOYCE, J., not sitting.